WILLIAM DOLSON, PLAINTIFF, v. SILAS SAXTON, SHERIFF OF THE COUNTY OF ULSTER, DEFENDANT.

*Sheriff — failure of to return execution — damages — proof of — Duty of sheriff to seize property — if indemnified — Chattel mortgage — retention and sale of property by mortgagor.*

The plaintiff, in an action against a sheriff for a failure to return an execution, is only entitled to recover the damages sustained by the neglect of the sheriff; and where, in such a case, it appears only that there was a small amount of property of the judgment debtor upon which a levy could have been made, it is error for the court to direct a verdict for the full amount of the execution, unless it appear, beyond dispute, that the full amount thereof could have been realized therefrom.

Where, after an execution has been issued to a sheriff, the plaintiff directs him

to levy upon property in the possession of the defendant, which is claimed by a third person, and offers to indemnify him, the sheriff is not bound to seize the same, provided he acts in good faith and shows that the property did not in fact belong to the defendant.

*Lommis* v. *Kasson* (43 Barb., 373) followed; *Van Cleef* v. *Fleet* (15 Johns., 175), *Curtis* v. *Patterson* (8 Cow., 65) overruled.

In an action against a sheriff for a neglect to return an execution, it appeared that at the time it came to his hands there was property in the possession of the debtor, mortgaged to third persons, whose title thereto had then become absolute by the terms of the mortgage; that the debtor retained and sold the property, although, as claimed by the defendant, subject to an obligation to apply the proceeds to the discharge of the debt. *Held,* that the question as to the good faith and validity of the mortgage should have been submitted to the jury.

*Quære,* as to whether the fact that the judgment debtor had, during the time the execution was in the hands of the sheriff, money deposited in a bank which the plaintiff might have secured by supplementary proceedings, was sufficient to prove that the latter had sustained damages by the neglect to return the execution.

MOTION for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the plaintiff directed by the court.

*Wm. Lounsberry,* for the plaintiff.

*Chas. A. Fowler,* for the defendant.

BOOKES, J. :

At the trial the court directed a verdict for the plaintiff ; and the case comes before us for review on exceptions, ordered to be heard in the first instance at General Term.

The action is against the defendant as sheriff, for not returning two executions issued to him upon judgments in favor of the plaintiff. One against Isaac L. Signor alone, for $324.20 ; the other against Signor and others for $151.19, exclusive of interest.

The evidence introduced on the trial by the defendant, was submitted with a view to show that the defendants in the executions had no property from which the money thereby directed to be collected, or any part of it, could have been made. But the court held it wholly insufficient to maintain the defense, declined to submit the case to the jury and directed a verdict for the plaintiff, for the full amount of the executions.

The proof showed that the defendants in the executions were, or that one of them was, in possession of leviable property in the defendant's county when the executions came to his hands; but that all of it (save a very insignificant part, amounting in value to about eight or ten dollars), was under mortgage to third parties, by whom it was claimed; that the mortgagee's title had become absolute, by the terms of the mortgage before the issuing of the executions; and, that the property was subsequently sold thereunder and was insufficient to satisfy them.

There was also evidence showing, and tending to show, that the mortgagor retained the possession of the mortgaged property, with permission from the mortgagees to dispose of it; but it was insisted on the part of the defendant, that under the proof the mortgagor's right to dispose of it was coupled with a duty to apply the avails, in case of sale, in satisfaction of the mortgage debts. It was shown that the plaintiff directed the defendant to proceed and sell the property under the executions and gave him indemnity. It is also proper here to remark that there was evidence other than that above alluded to bearing on the *bona fides* of the mortgage, but none of an entirely conclusive character in that regard. The defendant insisted that a case was made for the jury on the evidence, on the question of the *bona fides* of the mortgages. But the court held otherwise and directed a verdict for the plaintiff for the amount claimed.

The learned judge ruled as follows: That when a judgment debtor is in possession of property which is apparently his, over which he is exercising dominion, and such property is claimed by a third person under a chattel mortgage, the law pronounces that fraudulent, and the sheriff with execution, is bound to proceed and sell the property upon sufficient indemnity being given him, and that if he fail so to do, he becomes liable to the plaintiff for the amount of the execution. He further ruled that the mortgage to Morey, one of the claimants of the property, was, under the evidence in the case, fraudulent as matter of law, hence the *bona fides* of that mortgage was not a subject of examination by the jury as a question of fact, and still further, that until the mortgagee had reduced the property to actual possession, there was a leviable interest in the mortgagor, which the sheriff could seize under execution against him, and that he was bound to do so, and that if he omitted this he became liable.

He therefore declined to submit the case to the jury as to the *bona fides* of either mortgage, and directed a verdict for the plaintiff for the entire amount claimed.

It is not supposed necessary here to examine each of these propositions separately, for, as it seems, the leading and controlling question is, whether the learned judge was right in the general conclusion that the case presented no question of fact for the jury on the evidence.

It was undoubtedly true that the plaintiff fully and clearly established his right of action for nominal damages, and perhaps for the value of the ice also, proved to have been worth some eight or ten dollars. The defendant had omitted to make return of the executions, as by law he was required to do, and he was liable *prima facie* in the full amount of the executions in his hands so unreturned. The amount of the executions was *prima facie* the measure of damages. (*Ledyard* v. *Jones*, 7 N. Y., 550; *Swezey* v. *Lott*, 21 id., 481; *Bowman* v. *Cornell*, 39 Barb., 69.) But it lay with the defendant to mitigate by showing that the plaintiff had suffered no injury through his neglect. The action is given by the statute "*for damages sustained*," and while the sum directed to be collected on the executions was *prima facie* the true measure of damages, the defendant was at liberty to mitigate the amount by showing affirmatively that such full sum could not have been collected in the exercise of due diligence. (*Bank of Rome* v. *Curtiss*, 1 Hill, 275; *Pardee* v. *Robertson*, 6 id., 550; *Humphrey* v. *Hathorn*, 24 Barb., 278.) In the last case cited it was held that the sheriff might prove, for the purpose of reducing damages, that the defendant in the execution had no property, *or not sufficient property*, out of which he could have satisfied the execution by using the diligence required of him.

The action is given for "the damages sustained," whatever these damages may be. Therefore, in this case, the court was not authorized to direct a verdict for the full amount of the executions simply because there was indisputably a *small sum* which might have been made on them. The verdict could be directed only for such sum as by the evidence stood incontestably proved as the damages sustained. If there was a question on the proof as to the amount, the case was for the jury.

It is proper here to remark, inasmuch as the point is raised by counsel, that the damages were a legitimate subject of proof under the pleadings.

We are, then, brought to the question, whether the learned judge was right in holding that the mortgages were fraudulent and void in law, as against the creditors of the mortgagor, and in refusing to submit their *bona fides* to the jury as a question of fact.

In this ruling I am of the opinion he was in error. The mortgages were in due form, and had been duly filed and renewed. Their consideration, as sworn to by the witnesses, was not in any respect illegal. The circumstances under which the property was permitted to remain in the possession of the mortgagor were given to the jury, and such evidence was admissible, as it bore on the question of the *bona fides* of the mortgages. Now, let it be admitted that the mortgagor was allowed to retain the property and use it in his business, and even to sell it for the purpose of raising money to pay off the mortgage debts, and the *bona fides* of the transaction became a question of fact for the jury. It then became a question of intent whether the mortgages were made or were kept on foot to hinder, delay or defraud the creditors of the mortgagor. True, it stands decided that an agreement between the mortgagor and mortgagee, to the effect that the former may sell and dispose of the mortgaged property as his own, and appropriate the proceeds to his own use and benefit, the debt remaining unpaid, renders the mortgage fraudulent and void as to his creditors. (*Griswold* v. *Sheldon*, 4 N. Y., 581; *Russell* v. *Winne*, 37 id., 591, and other cases.) But it is also equally well settled that if the agreement be that the mortgagor may sell and pay over the proceeds to apply on the mortgage debt, the agreement will not render the mortgage fraudulent *per se*. (*Conkling* v. *Shelley*, 28 N. Y., 360; *Ford* v. *Williams*, 24 id., 359; *Miller* v. *Lockwood*, 32 id., 293; *Chatham Bank* v. *O'Brien*, 13 N. Y. Sup. Ct. Rep. [6 Hun], 231; *Frost* v. *Warren*, 42 N. Y., 204.) Under such agreement (as these cases held) the question of good faith is for the jury. (See cases above cited, especially remarks of Denio, J., in *Ford* v. *Williams*.) Now, the proof here tended to show an agreement between the mortgagor and mortgagee of the character last mentioned; hence, according to the decisions cited, the case was for the jury on the *bona fides* of the mortgages. The

learned judge, therefore, erred in holding those instruments fraudulent and void as to the plaintiff, as matter of law.   He should have submitted the *bona fides* of those instruments to the jury as a question of fact.

It is further insisted that the court was right in directing a verdict for the full amount claimed, because the plaintiff indemnified the defendant against injury growing out of a sale under the executions; that being indemnified, the defendant was bound to proceed and sell.   In support of this proposition, we are cited to *Van Cleef* v. *Fleet* (15 Johns., 175) and to *Curtis* v. *Patterson* (8 Cow., 65). Those cases, with others, however, were examined in the more recent case of *Lummis* v. *Kasson* (43 Barb., 373), and in so far as they have application to this in hand, are there overruled.   It is there decided that a sheriff is not bound to proceed, although indemnified, provided he acts in good faith; but may protect himself by proving a want of property in the defendant from which to satisfy the execution.   The case of *Lummis* v. *Kasson* received careful consideration by Mr. Justice SMITH, whose opinion was concurred in by both of his associates; and I will add, that for myself I am satisfied with his conclusion.   It is a General Term decision, and we should follow it until condemned by the appellate court.

These conclusions necessitate a new trial in this case, and we need not now examine the point that one of the defendants in the small execution had money in bank, which, by possibility, might have been reached on proceedings supplementary to execution had the defendant made return as he ought to have done.   This suggestion only applies to the small execution, and however the question in that regard should be determined, it would not here obviate the necessity for a new trial.   We shall not, therefore, here consider that question.   Perhaps on the retrial the case on this point may be quite different from the present.

A new trial must be granted, with costs to abide the event.


BOARDMAN, J., concurred in the result.


LEARNED, P. J.:

I concur in the result of the foregoing opinion of my brother BOOKES, but I wish to remark that the defendant's evidence is solely

in *mitigation of damages.* The argument of the defendant must be that the plaintiff has not been injured, because the judgment debtor was worth nothing. Where, as in this case, a judgment debtor is shown to have had, at the time when the execution was in the sheriff's hands, money lying in the bank, more than enough to pay the execution, I am not prepared to say that proof that the judgment debtor had no *leviable* property establishes the fact that the plaintiff has not been injured. The plaintiff, until the return of the execution, would hardly be expected to attempt to reach property not leviable. And as the defendant, by neglect to return the execution, violates his official duty, he must show that no harm has been occasioned, "by showing the inability of the debtor to pay." And it is well said in *Ledyard* v. *Jones* (7 N. Y., 550) that he cannot mitigate damages by showing that the plaintiff can still collect the debt out of the judgment debtor.

New trial granted, costs to abide event.